F. M. SMITH ET AL. v. JOHN L. WORTHAM, SECRETARY OF STATE.

No. 2528.  Decided June 11, 1913.

1.—Mandamus—Supreme Court—Secretary of State.

The authority of the Supreme Court to compel by mandamus the Secretary of State to perform an official act exists only when he is under a clear legal duty to perform it.  Judicial revision of his action in rejecting a charter of a corporation tendered him for approval, on account of its purpose clause, is not justified unless incorporation for the purpose named is clearly authorized by law.  (P. 109.)

**2.—Same—Corporate Charter—Purpose — Innocent Sports — Automobile Club.**

The authority to incorporate "to support and maintain bicycle clubs, and other innocent sports" (article 1121, Rev. Stats., 1911, subdiv. 36), is not limited to the creation of bicycle clubs. The doctrine of *ejusdem generis* is inapplicable, the words "and other innocent sports" logically including others than the particular one mentioned in the statute. (Pp. 109, 110.)

**3.—Same—Constitutional Law.**

Article 1121, Rev. Stats., 1911, subdiv. 36, is not unconstitutional as conferring on the Secretary of State a legislative power of determining what may be classed as an "innocent sport" for the support of which a corporation may be created. (P. 110.)

**4.—Corporation—Purpose—Innocent Sport—Mandamus.**

The words "and other innocent sports" (Rev. Stats., 1911, art. 1121, subdiv. 36) can not be employed alone to designate the purpose of a corporation created under that clause of the statute. The particular innocent sport to be supported should be designated. Nor is the description of the purpose as being "to support and maintain an automobile club, the purpose and object of which shall be to promote innocent sport by means of automobiles," a designation of the sport contemplated sufficient to require the Supreme Court to compel by mandamus the Secretary of State to approve and file the charter. (Mr. Justice Hawkins dissents upon this point.) (Pp. 109, 110.)

Original application to the Supreme Court for writ of mandamus requiring the Secretary of State to approve a corporate charter rejected by him.

*Leake & Henry* and *W. F. Ramsey,* for relators.—That the court has power to issue the writ of mandamus in this case: Const., art, 5, sec. 3; Rev. Stats.; art. 1012; Pickle v. McCall, 86 Texas, 212; Hipp v. Bissell, 3 Texas, 18; State v. Commonwealth, 9 Wis., 254; Sansom v. Mercer, 68 Texas, 492; Miller v. Todd, 95 Texas, 404.

That the doctrine of *ejusdem generis* has no application: U. S. Cement Co. v. Cooper, 88 N. E., 69; Strange v. Board of Comrs., 91 N. E., 242; 36 Cyc., 1121; Randolph v. State, 9 Texas, 521; Crow v. State, 6 Texas, 334; McElroy v. Carmichael, 6 Texas, 454; Winner v. City of Cartersville, 125 S. W., 861; St. Louis v. Laughlin, 49 Mo., 559; State v. Bersch, 83 Mo. App., 657; State v. Rosenblatt, 185 Mo., 114; State v. Broderick, 7 Mo. App., 19; State v. Eckhardt, 133 Mo., 321; State v. Smith, 135 Mo., 465; Mears Min. Co. v. Maryland Casualty Co., 144 S. W., 883; Weiss v. Swift & Co., 36 Pa. Sup. Ct., 376; Martin v. State, 47 So., 104.

*B. F. Looney,* Attorney General, and *C. M. Cureton,* Assistant, for respondent.—That the other innocent sports mentioned in the statute meant sports indulged in with bicycles or vehicles similar in construction: Navigation Co. v. Galveston Co., 45 Texas, 290; Thomas v. Ry. Co., 101 U. S., 82; State v. International Investment Co., 43 Am. Rep., 924; Wisconsin Telegraph Co. v. Oshkosh, 62 Wis., 38; Morse v. Buffalo & Marine Ins. Co., 11 Am. Rep., 588; Cleaver v. Cleaver, 20 Am. Rep., 34; Sutherland on Statutory Construction, secs. 422 to 436; Gundling

v. Chicago, 48 L. R. A., 230; Nichols v. State, 127 Ind., 406; State v. Walsh, 43 Minn., 444; Farmers & M. Natl. Bk. v. Hanks, 137 S. W., 1121; Commonwealth v. Kammerer, 13 S. W., 108; People v. Chretien, 137 Cal., 450; Joplin v. Leckie, 78 Mo. App., 8; Bucher v. Commonwealth, 103 Pa., 528; Cavan v. City of Brooklyn, 5 N. Y. Supp., 758; Ex parte Roquemore, 131 S. W., 1101.

The articles of incorporation must state in definite and sufficient words the real purpose of the corporation, so that the stockholders, as well as the State and the public generally may know its object, purpose, power and authority. Ency. of Law, vol. 7, pp. 649 and 653; In re McKees, Rocks, etc., 6 Pa. Dist. Rep., 477; Matter of Mutual Aid Association, 15 Phil. (Pa.), 625; In re Helping Hand, etc., 15 Phil. (Pa.), 644; In re Mulholland Benevolent Society, 10 Phil. (Pa.), 19; West v. Bullskin Prairie Ditch. Co., 32 Ind., 138; Crawford v. Prairie Creek Ditch. Assn., 44 Ind., 361; O'Reilly v. Kankakee Valley Drain. Co., 32 Ind., 169; Johnson v. Townsend, 124 S. W., 418; National Lit. Assn., 30 Pa. St., 150.

On delegation of legislative authority to secretary: State v. Gaster, 12 So., 740; Dowling v. Lancashire Ins. Co., 26 L. R. A., 717.

MR. JUSTICE PHILLIPS delivered the opinion of the court.

This is a proceeding to compel the respondent to approve the application for a corporate charter of the Dallas Automobile Club Building Association. The proposed charter states the following as the purpose for which the corporation is to be formed: "To support and maintain an automobile club, the purpose and object of which shall be to promote innocent sport by means of automobiles." The relators contend that with this designation of its purpose they are entitled to form the corporation under subdivision 36, article 1121, Revised Statutes, 1911, which authorizes the formation of corporations for the purpose: "To support and maintain bicycle clubs and other innocent sports."

The respondent refused to approve and file the charter, and now resists the application for a mandamus upon the following grounds:

1. That the rule of *ejusdem generis* should be applied in the construction of subdivision 36 of article 1121, under which the meaning of the general words, "and other innocent sports," is restricted by the particular designation of "bicycle clubs"; that accordingly the general words of the clause may be availed of for the formation of corporations for the purpose of supporting and maintaining only such innocent sports as may be indulged in by the use of instrumentalities performing substantially the same office as bicycles, and that automobiles are not within such class.

2. That if this rule of construction be not applied, so much of the subdivision as authorizes the formation of corporations other than for the purpose of supporting and maintaining bicycle clubs, is unconstitutional as a delegation to the Secretary of State of legislative authority in the right to determine what are innocent sports.

3. That the purpose of the corporation is not sufficiently stated to

enable him to determine whether that which it proposes to support and maintain is an innocent sport. In this connection the respondent admits in his answer "that any innocent sport indulged in by means of an automobile would, in his opinion, if it be held by this court that he is bound in law to pass upon such question, be an innocent sport." This admits, however, only that which would necessarily be true under the premise stated, and is therefore of no force as an aid in the determination of the question presented.

The authority of this court to compel by mandamus the performance by the Secretary of State of an official act exists only in those instances where he is under a clear legal duty to perform the particular act. Judicial revision of his action in rejecting a charter of a corporation tendered him for approval on account of its purpose clause is not justified unless the purpose named is clearly authorized by law.

The obvious intention of the Legislature in the enactment of subdivision 36 of article 1121 was to provide for the formation of corporations for the purpose of supporting and maintaining those certain sports commonly recognized and classed as innocent sports. No attempt was made to designate all of them by name, but in the language employed there is a clearly expressed recognition of their several kinds and individual existence as forms of amusement or recreation. This is manifest since the purpose authorized is not the support and maintenance of innocent sport in the abstract. If the clause were couched in such terms and simply read "to support and maintain innocent sport," it would exclude the idea of any need of further particularization either in respect to the means to be used or the distinctive sport intended, and the phrase would itself suffice as the purpose clause of such a corporation. Under such a statute the charter in question would undoubtedly be sufficient. Instead, however, of dealing with the subject in this way as it might have done with the same general end in view, the structure and terms of the subdivision plainly indicate that the Legislature had distinct sports in mind in its enactment and framed it accordingly. Proof of this lies in the use of the term "bicycle clubs" clearly in the sense of a definite innocent sport. The language is not apt, but it could have been used in no other sense since the general words "and *other* innocent sports," which immediately follow, necessarily impose such characterization upon it. The phrase, "and *other* innocent sports," could only imply a preceding designation by name of some one or more innocent sports. The effect of this phrase is the same as though, for illustration, instead of the term "bicycle clubs" being used, some well recognized innocent sport, such as baseball, had been named and the entire clause had read: "To support and maintain baseball and other innocent sports." With a term thus used in the opening words of the subdivision in the sense of a specification of a particular innocent sport, for the support and maintenance of which corporations may be formed, the general words "and other innocent sports" can be logically construed only as having reference to other particular or individual innocent sports and as intending a designation by name of the sport or

sports contemplated, in the charter of any corporation formed under their authority. The result of any other construction is to deny them effect. That they can not themselves be sensibly employed for the purpose clause of a corporation, as the general words of certain other subdivisions of the statute may be, is manifest. Unless, therefore, they have reference to definite innocent sports they perform no service in the statute. The purpose clause of the charter in question designates nothing that is recognized or can be classed as an innocent sport and makes no attempt to do so, and we are accordingly without authority to revise the respondent's action in refusing to approve the charter.

We do not agree with the respondent's contention that the doctrine of *ejusdem generis* should be applied in the construction of this subdivision of the statute. It has no application where the specific words exhaust the class of objects referred to, whereby the general words must bear a different meaning or be denied effect. Our view is, as above stated, that the term "bicycle clubs" was used in the sense of a distinct and individual innocent sport, complete within itself and separate in its identity. It therefore gives no color to the general words of the clause which refer to other innocent sports equally distinctive and individual in their nature. Neither do we regard the clause as in any sense involving an attempt to confer legislative authority upon the Secretary of State. The mandamus is refused.

MR. JUSTICE HAWKINS dissenting.

MR. JUSTICE HAWKINS delivered the following dissenting opinion:

Stating the propositions in different order and words, the majority opinion in this case holds, substantially:

1. That unless the purpose set forth in the proposed articles of incorporation or charter is clearly one which is authorized by law we are without authority to compel the Secretary of State to file it. In that statement of the law I heartily concur.

2. That subdivision 36 of our general incorporation law, Revised Statutes, article 1121, which authorizes the creation of corporations "to support and maintain bicycle clubs, and other innocent sports," does not attempt to confer legislative authority upon the Secretary of State. In that conclusion, also, I concur.

3. That the doctrine of *ejusdem generis* does not apply to said subdivision 36; or, in other words, that the clause, "other innocent sports," as used in the statute, should not be restricted to innocent sports produced or indulged in by means of a mechanical agency belonging to the same genus or class as bicycles. In that conclusion, also, I heartily concur, for the reason so clearly stated in the majority opinion, and also for other reasons which involve the well known origin and historical application of the rule of *ejusdem generis*.

4. That, nevertheless, the "purpose" of the proposed corporation, which the proposed charter declares shall be "to support and maintain an automobile club, the purpose and object of which shall be to pro-

mote innocent sport by means of automobiles," is not set forth in said charter with sufficient particularity or certainty to enable the Secretary of State to determine what the corporation is to do, or whether that which such corporation is to support and maintain is or is not an innocent sport. In that conclusion of my associates I can not concur.

Revised Statutes, article 1122, provides: "A charter must be prepared setting forth:

"1. The name of the corporation.

"2. The purpose for which it is formed."

So the real question is as to the proper construction of this subdivision 2.

Section 2 of the Final Title of our Revised Statutes declares that their provisions "shall be liberally construed with a view to effect their objects and to promote justice."

It is generally held by courts and by text-writers that a substantial compliance with general incorporation acts, and particularly with provisions thereof requiring that the charter shall state the "purpose" of the proposed corporation, is all that is necessary; and especially is this true as to corporations which are not formed for profit.

So I think that a fair and reasonable rather than a harsh and rigorous interpretation and construction should be given to this word "purpose," and thus conclude that the purpose clause of the proposed charter substantially meets the requirements of law; while my associates, in determining the force and meaning of the word "purpose," resort to what seems to me to be a very strict and entirely too technical rule of construction, and thus they conclude that the purpose clause of said charter is not sufficiently specific to meet the demands of said subdivision.

The statutory requirement that the "purpose" of the corporation shall be stated in its charter was intended for the protection of the incorporators and stockholders, and the public, in order that they may be advised as to the character of its corporate activities, and to enable the State, through its proper officers, to collect proper filing fees and franchise taxes, and to supervise and control the use and to punish the nonuse of its franchise to do. All of these purposes are sufficiently subserved and conserved, it seems to me, by the purpose clause which is set out in the charter before us. It expressly declares, in effect, that the purpose of the proposed corporation shall be to support and maintain an automobile club; that the purpose and object of such club shall be to promote sport; that such sport shall be limited to such as may be produced or indulged in by means of automobiles, and shall be further restricted to sport which is innocent. The very fact that the contemplated sport is to be by means of automobiles only sufficiently differentiates this proposed corporation from any which might legally be created under the clause "to support and maintain bicycle clubs"; and the fact that the purpose and object of such proposed automobile club is "to promote innocent sport," sufficiently indicates that the charter is based upon the concluding clause of said subdivision 36.

The word innocent as applied to sports has a well known and general

signification. "Innocent" means "lawful; permitted; as, an innocent trade." Webster's New International Dictionary. It means "free from legal or specific or moral wrong." Century Dictionary.

Said subdivision 36 is somewhat confusing in that it treats in the same way "bicycle clubs," which expression conveys a concrete idea, and "other innocent sports," which expression carries an abstract idea. But the "club" idea seems to have been prominent in the legislative mind in connection with "innocent sports," and I think that subdivision 36 should be construed just as if it read: "To support and maintain bicycle clubs for innocent bicycle sports and other clubs for other innocent sports."

The majority opinion concedes that there are "certain sports commonly recognized and classed as innocent sports," and that "the obvious intention of the Legislature in the enactment of subdivision 36 of article 1121 was to provide for the formation of corporations for the purpose of supporting and maintaining" them. It also concedes, in effect, that subdivision 36 should be construed just as if it read: "To support and maintain bicycle sports and other innocent sports." But the denial by the majority of this court of the writ of mandamus in this case, is based, as I understand their opinion, upon the failure of the proposed charter to make "a designation by name of the sport or sports contemplated in the charter." I think that view of the matter leaves out of consideration the fact that the purpose clause in the charter does practically make a designation by name of the proposed sport, towit, *automobile sport*.

Under the proposed charter any and all automobile sports which are innocent are within the statutory and charter powers of the proposed corporation; while all sports produced otherwise than by means of automobiles, and even all automobile sports which are not "innocent," if such there be, are barred by the statute and by the charter as well. In the absence of a statute calling expressly for a more specific statement of the corporate purposes in the charter why should one be demanded as a condition precedent to filing the charter?

Is not *automobile sport* as definitely "a designation by name" as is "bicycle sport"? I think it is. And it seems to me to involve a strained and very technical construction to hold (as I understand my associates do), that in order to come within the law it is necessary for a charter under the "other innocent sports" clause of said subdivision 36, to go further and specifically designate, by some additional name or names, the particular kind or kinds of innocent automobile sports which the corporation proposes to promote; as, for instance, *automobile racing*. I can not believe that our statute in its present form makes so rigid and drastic a requirement. After a diligent and painstaking search which has embraced all accessible authorities I am unable to find that any court or text-writer in the United States has ever before held that a general incorporation law should be construed so strictly; and no such authority has been cited in the exhaustive brief of the Attorney General, or in the argument at bar, or in the majority opinion.

There is another view of this matter which tends to confirm my conclusion as to the proper disposition of this case, and that is the construction which the Secretary of State who was in office when our general incorporation Act first became a law, and his successors in office for more than a generation have placed upon it. Not all, by any means, but several subdivisions of said statute are couched in language which, it seems to me, was intended, and should be permitted, to serve as sufficient expressions of corporate "purpose"; for instance, subdivision 24, which reads thus: "The purchase and sale of goods, wares and merchandise," etc. So far as I am advised such has been the uniform rule of construction and the custom of that office with regard to various such subdivisions of said statute, including subdivision 36. Have all such charters, many of which are still active, been improvidently issued, and should they, for that reason, be canceled in suits by the State?

In Galveston, H. & S. A. Ry. Co. v. State, 81 Texas, 602, this court, speaking through Mr. Associate Justice Gaines, afterward its distinguished Chief Justice, said: "We recognize the rule that in cases of doubt the contemporaneous construction of any department of the government is entitled to great weight, and is sometimes given a controlling influence."

In Tolleson v. Rogan, 96 Texas, 432, this court, speaking through Mr. Associate Justice Williams, said of a construction which the head of another executive department had placed upon a certain statute: "While, as this court has frequently held, actions of such officers in plain opposition to law can not be upheld, it is equally true that they are entitled to great weight in determining the true construction of doubtful and indefinite regulations made for their guidance."

"The construction given to a statute ·by the officers appointed to execute it, and acted upon for a long term of years, though not conclusive, is entitled to great consideration by the court." Ency. Dig. of Texas Reports, C. C., 974, and cases cited; Endlich, Interpretation, sec. 357, and cases cited; Black, Interpretation, 221-223, and cases cited.

Upon the whole, I think the writ of mandamus should be awarded, as prayed for. However, what I have said should be understood as restricted to the facts of this particular case, and not as intended to approve or encourage looseness in the preparation or in the filing of charters. On the contrary, I have long thought that the proper practice is to make the purpose clause of a charter as full and complete as is practicable. But this case involves a status which has already become fixed, and must be determined, one way or the other, upon the question of law which it presents.