

# THE ATTORNEY GENERAL

## OF TEXAS

GROVER SELLERS

~~ROBXBENXSHEBPIKRD~~
ATTORNEY GENERAL

AUSTIN 11, TEXAS

Honorable Wm. J. Lawson
Secretary of State
Austin, Texas

Honorable Wm. J. Lawson
Secretary of State
Austin, Texas

Attention: Hon. Will Mann Richardson

Opinion No. O-3991
Re: May the charter of Avion Mutual
Housing Corporation be granted
under the present statutes? If
so, will the filing fee be $10.00
and will it be exempt from the
payment of franchise tax?

Dear Sir:

  This will acknowledge receipt of your request for the opinion of this department on the hereinabove mentioned question.

  In connection therewith, you submitted to us the application for the charter, a copy of the by-laws and a letter from the Federal Works Agency in Washington explaining certain provisions in the certificate of incorporation and in the by-laws.

  We quote from your letter as follows:

  "It is the contention of the incorporators that this is a benevolent non-profit corporation and should pay only the $10.00 filing fee and be exempt from franchise tax.

  "This Department has contended that the purpose is too broad for us to determine under what subdivision of Article 1302 they are seeking to incorporate. It seems probable, however, that Subdivision 44 which allows the corporation to establish, maintain, erect and repair a department house is the closest to the purpose of the corporation. It is the contention of this Department that if such a purpose is used, even though the corporation is not organized for profit, it must pay the $50.00 filing fee and the annual franchise tax.

  "This Department has also objected to Articles 7 and 8 of the charter. Article 7 provides restrictions not authorized by the statutes on the amendment of the charter, and Article 8 provides for a dissolution by two-thirds of its members, when the Texas Statutes require four-fifths.

"We would appreciate your examining these in-
struments and giving us an early opinion as to (1)
whether this charter may be granted under the present
statutes and (2) whether if such a charter is granted,
the filing fee will be $10.00 and the corporation
exempt from franchise tax."

Article 1302, Vernon's Annotated Civil Statutes, enumerates
the purposes for which a private corporation may be formed. The pro-
posed charter is required, by Article 1304, Vernon's Annotated Civil
Statutes, to state the purpose for which the corporation is formed.
It has been held by our Supreme Court, in the case of Johnston vs.
Townsend, 103 Texas 122, 124 S. W. 417, that the purpose should be
stated with sufficient clearness to enable the Secretary of State to
determine which of the purposes specified in Article 1302, supra, the
applicants seek to incorporate under.

In the case of Smith vs. Wortham, 106 Texas 106, 157 S.W. 740,
it is stated that:

"The statutory requirement that the 'purpose' of
the corporation shall be stated in its charter was in-
tended for the protection of the incorporators and
stockholders, and the public, in order that they may
be advised as to the character of its corporate activ-
ities, and to enable the State, through its proper
officers, to collect filing fees and franchise taxes,
and to supervise and control the use and to punish
the non-use of its franchise." (Underscoring ours.)

In the certificate of incorporation, or application for a
charter, submitted with your request letter, it is stated in the first
paragraph thereof as follows:

"That we, the subscribers, of the said County of
Dallas and State of Texas under the provisions of the
Revised Civil Statutes of 1925 as amended by the Legis-
lature of Texas, Title 32, Chapter 9, Article 1396 there-
of and the regulatory articles succeeding said Article
1396 and contained in said Chapter 9 together with all
amendments thereto, do hereby form and incorporate our-
selves into a voluntary association for a Benevolent
purpose, more particularly set out in Article 2 here-
after, and to that end we hereby adopt and subscribe
the following:" (Underscoring ours.)

Article 1396 of the Revised Civil Statutes of Texas, 1925,
Title 32, Chapter 9, reads as follows:

"Any religious society, charitable, benevolent,
literary or social association (other than colleges,
universities, academies or seminaries), and any military

or fire company, may, by the consent of a majority
of its members become a body corporate under this
title, electing directors or trustees, and perform-
ing such other things as are directed in the case of
other corporations; and when so organized shall have
all the powers and privileges, and be subject to all
the restrictions in this title contained, for the
objects named in the charter, and shall have the same
power to make by-laws for the regulation of their
affairs as other corporations."

Said certificate of incorporation, in Article 2 thereof,
states the purpose and cause as follows:

"Article 2. Purpose and Powers. The benevolent
purpose for which this Corporation is formed is to
manage and operate, under appropriate agreements,
in the interest of the United States of America and
the members of the Corporation as occupants thereof.
Defense Housing Project TEX-41091, constructed by
the United States, through the Federal Works Admin-
istrator, in the town of Grand Prairie, County of
Dallas, Texas, known as Avion Village, in order to
provide housing for families of persons engaged in
national defense activities pursuant to an act of
Congress approved October 14, 1940 (54 Stat. 1125),
as amended, known as the Lanham Act, and similar pro-
jects in the State of Texas for the housing of other
persons, as may be agreed upon by the Corporation
and the United States; to maintain, protect and safe-
guard the Project and Project property and secure
to the Government the orderly and regular receipt
of rentals, installment payments and all other charges
thereon and revenues therefrom; by becoming the pur-
chaser thereof to enable the Government to dispose of
said Project and Project property as required by Sec-
tion 4 of said Act of Congress, upon the termination
of the present emergency as declared thereunder by
the President of the United States or prior thereto,
and thereby assure the continued usefulness and oc-
cupancy of the Project thereafter; to serve as the
medium and means by which the residents and occupants
of the Project and houses thereon, as members of the
Corporation, through corporate ownership of the Project
and Project property on a non-profit mutual participa-
tion plan, obtain the benefits and security of homes
and permanent shelter for their families and construc-
tive community planning under management of their own
choosing in keeping with recognized standards of safety,
health and wholesome living, together with such services,
goods, supplies and facilities as are necessary or de-
sirable for the operation of the homes, and in addition

thereto benefits which contribute to their general
welfare including health, recreation and education,
as citizens of the community. The Corporation shall
have full powers to accomplish the benevolent pur-
pose for which it is organized, and in the exercise
thereof shall have each and every power granted to
corporations organized under the laws of the State
of Texas, and in addition thereto shall have such
privileges as are extended to it by the United States
of America or the laws thereof."

From the purposes expressed in the application for the charter,
quoted above, it is the opinion of this department that the Avion Mutual
Housing "Corporation" is neither a religious society, a charitable, benev-
olent, literary or social association, nor a military or fire company,
within the meaning of those terms as used in Article 1396, supra, author-
izing the incorporation of such societies, associations and companies
under Title 32 of the Revised Civil Statutes of Texas, as amended.

In the case of State vs. Texas Mutual Life Ins. Co. of Texas,
et al, 51 S. W. (2d) 405 (Reversed in 58 S. W. (2d) 37, on other grounds)
the court, in speaking of the meaning of the word benevolent, used the
following language:

"Broadly speaking, the word (benevolent) implies
'merely wishing well to others; beneficence; doing well.'
It is a broader term than 'charity,' which it includes,
and with which it is frequently used synonymously.
Charity in its legal sense implies giving without consi-
deration or expectation of return. Whereas benevolent
is applied to any act which is promoted by or has for
its object the well being of others." (Underscoring ours.)

In the case of Kansas Masonic Home vs. Board of Commissioners
of Sedgwick County, 106 P. 1082, 81 Kan. 859, it was held that the words
"benevolent" and "charitable" are nearly synonymous in meaning, and as
frequently used are entirely so, especially when applied to purposes or
institutions.

In the case of Kappa Gamma Rho vs. Marion County, et al, 279
P. 555, the Greek letter society, owning the lot on which its fraternity
house was situated, was held not entitled to have its property exempted
from taxation, as provided by statute, on the ground that it was not a
"benevolent, charitable, literary or scientific society," within the
meaning of such statute exempting property of such societies from taxa-
tion. The court held that "benevolent societies", as that term was used
in the statute, meant societies organized with the dominant purpose of
doing good to others rather than for the convenience of their own members,
and did not include a fraternity which was merely beneficial to its own
members.

While it appears from the application for the charter that the applicants seek to incorporate as a benevolent corporation, and refer to the "benevolent purposes for which this corporation is formed," the purpose clause, in our opinion, does not show that the purposes of said corporation are "benevolent" in the sense that said term is used in Title 32 of the Revised Civil Statutes of Texas, dealing with corporations.

From the purpose clause in the application, it is clearly shown that the objects of the corporation are primarily for the benefit of its own members, and not for the benefit or well being of others.

It is true that the purpose clause states that the purpose of the corporation is "in the interest of the United States of America." That feature alone, however, does not constitute a benevolent corporation, as contemplated by our incorporation statutes. Every corporation in Texas, benevolent or otherwise, must have a purpose that is in the interest of the United States of America, the State of Texas, and the general public, under penalty of being void and unauthorized as against public policy.

In view of the foregoing, therefore, it is the opinion of this department, under the facts stated, that the Avion Mutual Housing "Corporation" can not be incorporated under subsection 2 of Article 1302, Vernon's Annotated Civil Statutes, which provides that private corporations may be formed for "the support of any benevolent, charitable, educational or missionary undertaking."

Whether the charter applied for may be granted under the present statutes, depends on whether the purpose, as hereinabove quoted, is stated with sufficient clearness to enable the Secretary of State to determine that the purpose contemplated is one provided for by Article 1302, supra, and that the purposes contemplated do not embrace more than one of the subdivisions of Article 1302, Johnston vs. Townsend, supra.

From the facts submitted to us in connection with your request for our opinion, it is the opinion of this department that the purpose is not so clearly stated in the application for the charter as to clearly show that it is authorized under any of the present Texas incorporation statutes and that therefore the application for said charter should be refused.

In view of our answer to your first question, your other questions no longer exist.

Very truly yours,

GROVER SELLERS
EP:RS:hep
This opinion
Considered and
Approved in
Limited Conference.

ATTORNEY GENERAL OF TEXAS

By  s/ Edgar Pfeil
     Edgar Pfeil
        Assistant

APPROVED
OPINION
COMMITTEE
BY BWB CHAIRMAN